## HEARD *v.* NATIONAL BANK OF WILKES.

1. While Civil Code (1910) § 4293 requires that a note or other evidence of debt given for the purchase-price of stock in any incorporated company', sold by any peddler, agent, or traveling salesman or promoter, traveling for the purpose of making such sale, shall have expressed on its face the consideration thereof (not including sales after the original purchase-price has been paid and the certificates of stock have been issued), it further declares that any person who may purchase any such note or evidence of debt, "when the consideration is expressed in the face of the note or contract," shall take it subject to all the equities between the original parties. It follows that where a negotiable note is given for such stock, but does not express on its face the considera-ation, a bona fide purchaser for value before due and without notice takes free from any defense by the maker on account of equities between the original parties.

2. Aside from the provisions of the code section above cited, there was no sufficient evidence to show notice to the purchaser of the negotiable note sued on, who purchased it for value before it was due. Accordingly, there was no error in directing a verdict for the plaintiff.

JANUARY 16, 1915.

Complaint. Before Judge Walker. Wilkes superior court. December 22, 1913.

*Colley & Colley,* for plaintiff in error. *J. M. Pitner,* contra.

LUMPKIN, J.  The National Bank of Wilkes brought suit against J. E. Heard on a promissory note dated September 3, 1912, for $200, with interest at eight per cent., due April 1, 1913, payable to the order of the maker, and indorsed by him.  The defendant pleaded, that the note was given for ten shares of stock in a corporation known as the Southern Beverage Company of Augusta, Georgia; that it was sold to the defendant by traveling salesmen traveling for the purpose of making such sales; that it did not have expressed upon its face the consideration or kind of stock for which it was given, as required by the act of 1912 (Acts 1912, p. 153), and was therefore void.  He also pleaded want of consideration and failure of consideration; that the note was obtained from him by fraudulent representations; and that the plaintiff was not a purchaser bona fide, for value, and without notice.  On the trial the presiding judge directed a verdict for the plaintiff.  The defendant's motion for a new trial was overruled, and he excepted.

The act of August 17, 1912, declares that all promissory notes, contracts, or other evidences of debt, given for the purchase-price of stock in any incorporated company, and sold by any peddler, agent, or traveling salesman or promoter, traveling for the purpose of making sales, shall have expressed on the face of such notes, contracts, or other evidences of debt, the consideration thereof.  It is provided that the act shall not apply to sales after the original purchase-price has been paid and certificates of stock have been issued.  It is further declared that any person who may purchase any note, contract, or other evidence of debt, given for such stock, "when the consideration is expressed in the face of the note or contract as required in section 1, whether before due and without notice or otherwise, where the consideration is so expressed, shall take the same with all the equities existing between the original parties and the maker of such note, contract, or other evidence of debt, and the maker shall have the right to make any defense to the payment of same as against such purchasers that could have been made against the original payee."  It is made a misdemeanor to sell stock without expressing the consideration in the face of the note, contract, or other evidence of debt taken therefor.  While this act requires the sellers of such stock to express the consideration on the face of the note or contract taken therefor, and makes it a misdemeanor to fail to do so, it does not declare that the note

4

shall be void in the hands of an innocent purchaser before due and without notice. It declares that the purchaser of such a note, contract, or evidence of debt shall take subject to the equities between the original parties, and with the right to make any defense against the holder that could have been made against the original payee, "where the consideration is expressed in the face of the note or contract." This clearly contemplates that an innocent purchaser of a negotiable instrument before due and without notice will be protected, except where the consideration is stated in the face of the instrument.

In 1897 a somewhat similar act was passed in regard to promissory notes or other evidences of debt, taken for the purchase-price of any patent, copy, or proprietary right, or territory for the sale thereof, or for the sale of any patented or copyrighted article or thing. Civil Code (1910), § 4293. It was held by this court that a promissory note given for the purchase-price of a patent right, which failed to comply with the act in not expressing upon its face the consideration therefor, or stating the thing or article for which it was given, was not void in the hands of a bona fide holder. *Smith* v. *Wood,* 111 *Ga.* 221 (36 S. E. 649) ; *Parr* v. *Erickson,* 115 *Ga.* 873 (42 S. E. 240) ; *Hunt* v. *Davenport,* 138 *Ga.* 622 (75 S. E. 644). The rulings made in those cases practically control that now under consideration as to the point above mentioned.

2. It was contended, that, aside from the act, the sellers made fraudulent representations to the defendant to induce him to buy, that the stock was worthless, and that the plaintiff was not an innocent purchaser for value and without notice. There was some evidence tending to sustain the contention as to the fraudulent representations, and the worthlessness of the stock. The evidence relied on to show notice to the bank was the testimony of the defendant, in substance as follows: In order to induce him to buy the stock, the sellers represented that the vice-president of the bank, which is the present plaintiff, had taken $500 of the stock, and was treasurer of the company, and showed him a note for that amount, purporting to be signed by the vice-president in his individual capacity; that, about a week or two after making the purchase and giving the note, he met the vice-president of the bank, and asked him why he sent the sellers of the stock out to the defendant's

house; that the vice-president said that he did not send them, "that he merely gave them a list of names, as long as his arm, of good people for them to see;" that the defendant told him about the representation as to his having taken $500 of the stock, and he denied having made such subscription or having given any note therefor, and said that if the sellers had such a note, it was a forgery; that defendant asked him what he thought of the stock, and he said that he did not have the money to buy any of it, but thought well of it and believed it would pay. It was shown by the uncontradicted evidence of the cashier of the bank, that the note was purchased by him for it September 4, the day after it was given; that the bank paid $185 therefor; that he had no notice of any defenses to it; that he supposed that the persons from whom he purchased the note were selling something to citizens of the county, as "we" discounted several notes for them on farmers and business men, but he did not know that they were selling stock in a corporation. The cashier was the officer who acted for the bank in making the purchase, and there is nothing in the evidence to show that the vice-president represented the bank in connection with the transaction, or that he was acting otherwise than in his individual capacity at the time when he gave the sellers the list of names. Under the evidence, his knowledge at that time was not sufficient to charge the bank with notice subsequently when it bought the note in due course of trade. While generally the question of what would put a prudent man on his guard is a question for the jury, in this case there was nothing on which the jury could base a finding that the bank was charged with notice; and accordingly there was no error in directing a verdict for the plaintiff.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*