## 8249. WILLIAMSON v. MARTIN-OZBURN REALTY COMPANY.

1. A defendant can not by demurrer to a petition avail himself of the defense of dual agency on the part of the plaintiff, where it does not appear from the petition that the inconsistent relationship was unknown to him.
2. The evidence authorized the verdict, and no error of law was committed.

DECIDED FEBRUARY 16, 1917.

Complaint; from Fulton superior court—Judge Pendleton. December 20, 1915.

*Westmoreland & Westmoreland,* for plaintiff in error.

*Dorsey, Shelton & Dorsey,* contra.

JENKINS, J. On March 22, 1913, Martin-Ozburn Realty Company filed suit in the superior court of Fulton county against R. H. Williamson, in two counts. In the first count the plaintiff alleged that the defendant owed it $690, with interest at 7 per cent. per annum from November 8, 1912, for commissions due the plaintiff as real-estate agent and broker; that prior to May, 1912, Mrs. Harriett F. Brandon and Mr. James R. Wylie, through their agent, Bun Wylie, listed a certain piece of real estate with the plaintiff for sale, agreeing to pay the plaintiff $690 if it sold the property for $21,690, and that it showed the property to various prospective purchasers, and in the month of May, 1912, through its agent and salesman, A. M. Reid, showed it to the defendant, stating to him the price and the names of the owners; and that on November 8, 1912, the defendant, by fraudulent representations to the owners, purchased the property directly from the owners, without disclosing to them that the plaintiff had shown the property to the defendant and thereby defrauded the plaintiff out of its commission. The second count set up an indebtedness to the plaintiff in quantum meruit for labor performed and services rendered, in the sum of $575, this count alleging that the defendant came to the plaintiff some time prior to May, 1912, and requested it to assist him in finding and purchasing some vacant property in the city of Atlanta, suitable for subdivision and improvement; that the plaintiff informed him that there was listed with it for sale the property already indicated; and that thereafter the plaintiff, through its agent, made frequent trips from its office, in company with the defendant and showed him this property, explaining fully the terms

of the sale and informing him who the owners were and stating the price at which it was listed; that at his instance and request the plaintiff had divers interviews and consultations with him, relating to said property, running through the month of October, 1912, and that at his request the plaintiff assisted him also in disposing of certain promissory notes held by him against other property, which he represented was a necessary prerequisite to his purchase of the property involved; that on or about November 8, 1912, he purchased the said property directly from the owners thereof, for the consideration of $21,000, and that by reason of the plaintiff's services rendered at his request, in connection with the purchase of said property, he became indebted to the plaintiff in the sum of $575, this being the usual and customary real-estate agent's commission on said sale.

The defendant interposed a demurrer to each of the counts of the petition, on the ground that neither of them stated facts sufficient to constitute a cause of action. The demurrer was sustained as to the first count and overruled as to the second count; and the defendant filed exceptions pendente lite. Upon the issue raised upon the second count there were two trials. The first verdict was set aside by the trial judge, and on the second trial the jury returned a verdict against the defendant for $500. He made a motion for new trial, which was denied, and he excepted, assigning error upon the refusal to sustain the demurrer to the second count of the petition, and upon the overruling of the motion for new trial.

The record discloses that A. M. Reid, the plaintiff's agent in this transaction, testified that he and Williamson made several trips to various parts of the city and looked at various tracts of land, among which was the vacant block belonging to Wylie and Brandon, involved in this litigation. According to Reid's testimony, Williamson was then informed that this property was listed with the plaintiff for sale, and he was given the names of the owners and information as to the price and terms. Reid further testified that he assisted Williamson in figuring out how this property could be advantageously subdivided, and that the matter of its purchase was thoroughly discussed with Williamson on frequent occasions thereafter at the office of the plaintiff. Reid further testified that at the request of Williamson he made a trip to West.

End, and remained there for an hour or more, for the purpose of aiding in the disposition of certain purchase-money notes held by Williamson, which he represented to be a necessary prerequisite to the purchase of the property involved. According to Reid's testimony, Williamson requested him to stay away from the owners, as he preferred to purchase the property himself directly, but that he "would take care of" the plaintiff's compensation.

According to the evidence for the plaintiff, after being requested by Williamson to let him make the trade direct, and after being promised by him that its compensation would be taken care of, it did not have any interview with the owners or do anything to induce them to sell the property. The evidence of both the owners showed that the plaintiff had done nothing to induce them to make the sale. According to the evidence of Brandon, who was sworn as a witness for the defendant, something was said by Williamson, at the time the trade for the property was closed, about his being entitled to a reduction on the price, equivalent to the agent's commission. Wylie, the other of the owners, also stated in his testimony for the defendant that when Williamson and he were looking over the property the statement was made by Williamson that as he was dealing with the owners direct, a sum equal to the commission should be deducted from the price. The owners of the property further testified in behalf of the defendant that the property had not in fact been listed for sale by them with the plaintiff

1. Considering first the exception made to the overruling of the general demurrer, we are of the opinion that the second count of the petition sets out a valid cause in quantum meruit. Certainly, in the absence of a special demurrer, the services rendered by the plaintiff in assisting the defendant, at his request, in finding and purchasing the property referred to, are adequately set forth in this count; and while it is true it is not alleged that there was specific agreement on the part of the defendant whereby he obligated himself to pay for such services, yet the rule of law which ordinarily implies such a promise when one accepts the benefit of valuable service rendered by another is sufficient to supply this omission. Civil Code (1910), § 5513. In such a case it is not necessary to allege or prove an express promise. *Jackson* v. *Buice,* 132 *Ga.* 51 (63 S. E. 823); Keener on Quasi-Contracts, 19, 318; *Citizens Bank* v. *Rudisill,* 4 *Ga. App.* 37, 41 (60 S. E.

818) ; 40 Cyc. 2808; Moses v. Macferlan, 2 Burrow, 1008.    The
petition having alleged the service by the plaintiff in behalf of the
defendant at the request of the latter, we can not hold as a matter
of law that any compensation therefor was due by the owners and
not by the defendant.    But it is insisted by counsel for plaintiff
in error that the general demurrer to the second count of the pe-
tition should have been sustained for the reason that the allega-
tions therein contained set out the existence of such dual agency
on the part of the plaintiff as would forfeit its right to compen-
sation from the defendant principal, in that the petition shows on
its face that the property involved had been listed for sale with
the plaintiff by the owners thereof.    In support of this contention
counsel cite *Gann* v. *Zettler*, 3 *Ga. App.* 589 (60 S. E. 283), and
*Williams* v. *Moore-Gaunt Co.*, 3 *Ga. App.* 756 (60 S. E. 372).    We
are not prepared to hold, however, that because an owner may have
listed property with a broker for sale, the broker is thereby neces-
sarily precluded from entering into an agreement with the pur-
chaser whereby he would be entitled to render and charge for serv-
ices in connection with a sale of such property; although in such
a transaction the utmost loyalty and good faith on his part are re-
quired.    In the present case the terms on which the owners had
listed this property with the broker are not disclosed, and there is
no special demurrer to the petition.    We can therefore assume, for
the purposes of the demurrer, that the property had been listed
with the plaintiff by the owners at a stated price and on the ex-
press condition that the broker's compensation should be paid by
the purchaser.    It can also be said that contracts of dual agency
are not void per se, but are void only when the fact that the agent
represented both parties was unknown.    The burden of making
out a defense to a prima facie liability rests upon the defendant;
and where dual agency is relied on, it is necessary for the defend-
ant to allege and prove not only the incompatible relationship, but
also that it was unknown.    It follows that unless both of these facts
appear upon the face of the petition, a demurrer could not raise
such a defense.    See *Red Cypress Lumber Co.* v. *Perry*, 118 *Ga.*
876 (45 S. E. 674).    We think the court properly overruled the
demurrer.

2.    There was abundant testimony, which the jury were author-
ized to accept, sustaining each of the material allegations made in

the petition. There was no plea setting up the defense of dual agency; and, from the evidence at the trial, the jury were authorized to believe that the plaintiff had exercised good faith towards all parties concerned, and that he violated no duty which he might have owed to either the owner or the purchaser. Furthermore, in this connection, the owners of the property, in testifying for the defendant, denied that the property had been listed for sale with the plaintiff; and the jury, being the exclusive judges of the weight of the evidence, were authorized, even on that theory, to find that the plaintiff violated no duty of loyalty and good faith. *Christian* v. *Macon Ry. &c. Co.,* 120 *Ga.* 314, 317 (47 S. E. 923). See also *Dacy* v. *Gay,* 16 *Ga.* 203; *Zeigler* v. *Scott,* 10 *Ga.* 389 (8) (54 Am. D. 395); *Bussey* v. *Moses,* 48 *Ga.* 120; *Slaton* v. *Fowler,* 124 *Ga.* 955 (53 S. E. 567). While we are inclined to think that the verdict was liberal in amount, we do not feel authorized, in view of all the evidence, to disturb the finding of the jury on that ground.

3. The exceptions taken to the charge of the court and to the failure to charge are not borne out by the certified record in the case, although counsel for the defendant in error admits the correctness of the excerpts complained of, and the omission to charge, as excepted to. This case having been twice tried in the court below, we surmise that counsel on both sides base their contentions upon the charge of the court given in the first trial, and not upon the charge given in the trial of the case now before us for review.

*Judgment affirmed. Broyles, P. J., and Bloodworth, J., concur.*